The STATE of Oklahoma, Appellee,

v.

Charles Thomas STOTTS, Appellant.

No. 53458.

Court of Appeals of Oklahoma, Division No. 2.

Dec. 1, 1981.

Rehearing Denied Dec. 30, 1981.

Certiorari Denied Feb. 25, 1982.

Released for Publication by Order of Court of Appeals March 4, 1982.

Robert H. Macy, Dist. Atty., Mary M. Smith, Oklahoma City, for appellee.

Forest N. Simon, Oklahoma City, for appellant.

BRIGHTMIRE, Judge.

Bondswoman, Linda Rowland, executed a bail bond on behalf of Surety Insurance Company of California May 12, 1978, to assure the court appearance of criminally charged Charles Stotts on May 17, 1978. The case was passed from time to time and finally tried on June 26 and 27, 1978. Stotts was convicted of obtaining money under false pretense and given 10 years in penitentiary. The court released defendant on the same bond and ordered him to reappear July 6 for sentencing. He failed to appear and the bond was ordered forfeited. Without producing Stotts, the bondswoman asked the court to vacate the forfeiture. The trial court refused and the surety appeals. We affirm.

## I

On the last day of Stotts' trial, Rowland checked with the court several times to find out if a verdict had been reached by the jury, the last time being 1700 hours. The jury returned a verdict at 1830 hours but Rowland did not find out about it until about an hour later. By that time Stotts was gone. He did not show up for sentencing July 6 and was not located by Rowland until August 28 when he was wounded in a Boston, Massachusetts shootout. The Oklahoma County Sheriff requested Boston Police Department to put a hold order on Stotts. It did, but would not release him for return to Oklahoma.

On September 25, Rowland filed a motion to vacate the bond forfeiture ordered by the trial court July 6. The basis advanced for this relief was that she was "neither asked [about], nor did she give her consent to" allowing Stotts to remain on the same bond following the conviction contrary to an unwritten policy adopted by Oklahoma county judges in 1970. Violation of such policy is especially significant in this case, contends Rowland, and should operate to estop the State from ordering forfeiture of the bond because of Rowland's inability to surrender Stotts within 60 days after the nonappearance.

The motion was overruled and the bondswoman appeals advancing two points of error she says were committed by the court: (1) in finding that Stotts "was not surrendered within 60 days"; and (2) in holding that estoppel does not run against the state.

## II

■ The argument Rowland makes in support of her first contention is that because of Stotts' imprisonment in Massachusetts it was impossible for her to surrender him in this state within 60 days after he jumped bail, and since she offered to pay his expenses back to Oklahoma upon his release by Massachusetts authorities, she

has done all she can do and should not be penalized by a forfeiture.

The short answer to this idea is that Stotts was not in captivity on July 6—the day he was to be in the Oklahoma court. In fact, he was not locked up in Boston until some 53 days after he jumped bail. During this time the bondswoman had no success in locating the principal and, from all that appears, there is no reason to believe she would have found him within the 60 day period if he had not gotten involved in the shooting scrape. But regardless of whether she could have or not, her contention cannot be justified by statute, case law or logic. One ultimate consequence of her theory is that all a bailed defendant has to do to avoid both a required appearance in court and a forfeiture of his bond is jump bail and within 60 days thereafter get himself locked up somewhere.

We find no merit in the first proposition.

### III

The second basis for reversal—that the state should be estopped by an informal policy said to have been followed by the district judges of Oklahoma County since 1970—is also unsound.

 As a general rule the doctrine of estoppel is not a legal weapon available for use against the government.[1] There are exceptions,[2] of course, but none apply here because the statutory law on the subject, of which the bondswoman is bound to be aware, specifies minimal terms of a bail bond and affords remedial protection against a potential bail jumper. Her remedy was to surrender the defendant into open court thus invoking the court's power to either increase the bond or relieve the bondsman from his obligation altogether.[3] We view the so-called informal policy of the Oklahoma district judges, if indeed it still exists, as incompatible with the bail bond

law and an infringement on the prosecutorial prerogatives of the district attorney.

Absent a bond provision calling for an earlier termination, the law contemplates what the courthouse people refer to as a "cradle to the grave" bond—one that remains in force until accused is either acquitted or starts serving a sentence.[4]

Here the bondswoman made no effort to appear and prove Stotts had breached the undertaking or was about to jump bail, nor did the bond by its terms end upon a conviction of the principal. There is, therefore, no basis for estopping the state from ordering the bond forfeited.

The order of forfeiture is affirmed.

BACON, P. J., and BOYDSTON, J., concur.

---

1. *Bd. of Ed. of Ind. School Dist. No. 48 v. Rives,* Okl., 531 P.2d 335 (1975); *Ind. School Dist. No. 4 v. St. Bd. of Ed.,* Okl., 451 P.2d 684 (1969).

2. *Id.*

3. 59 O.S.1971 §§ 1327 and 1328.

4. *Lorentz et al. v. State of Okla.,* Okl., 531 P.2d 332 (1975); *Boice v. State of Okla.,* Okl., 473 P.2d 241 (1970).